Good morning. Good morning. May it please the Court, Scott Mossman for the petitioner, Colette Nawaya. I plan to reserve two minutes. You'll have to keep track of your own time, but that's the full time. Thank you. There are two primary issues in this case. The first is whether the overstay charge of deportability was correct. And second, if it was, whether the government should be stopped from removing Mr. Nawaya based on the facts alleged below. I'd like to address the overstay charge first, because if we prevail on that, we don't need to get to the equitable estoppel issue. And under the board's decision that Mr. Nawaya was deportable for overstaying, the district directors purported termination of status. That's contrary to two of its own published decisions. In matter of SIFRI, in matter of Liburd, cited in our briefs, the board held that an overstay charge was not appropriate based on a finding that he had violated status or that even that the district director had found that he had violated status or purported to revoke or terminate his status. That's the board's published opinions. The board departed that from that in this case, and it shouldn't have. Those two decisions, matter of SIFRI, matter of Liburd, held that where a nonimmigrant student or nonimmigrant violates his status, the government has to charge failure to maintain status, not overstay. And it has to prove the failure to maintain status to the immigration judge in a due process hearing by clearing convincing evidence. Okay. So you cited matter of Liburd? Matter of Liburd and matter of SIFRI, Your Honor. Okay. Show me the language in matter of Liburd that you're relying on. Yes, Your Honor. It's a two-page decision. It is, Your Honor. We should be able to pinpoint the language readily. That's right. Matter of Liburd involved a person admitted on an H-2 visa and admitted for a certain length of time. Under the terms of the visa, if they stopped working for 60 days, they were in violation of status, and that occurred. She stopped working for 60 days, but that occurred before the end of her period of admission. So the district director, let's see. So tell me the language that you're relying on. Yes. All right. This is at page 770. It's partway down. On the basis of these allegations, respondent was charged with deportability as an overstay. At the hearing, the respondent admitted that her employment had been terminated but disputed the date of the termination. Farther down. On this basis, what paragraph are you on, page 770? Well, I see. On the basis of these allegations, the respondent was charged with deportability as an overstay. Okay. So what does that portend for your argument? Well, it held that they shouldn't have charged her as an overstay. Where? Where? They cited a matter of SIFRI, but maybe if we could look at matters of SIFRI then tell me. So that case doesn't help you. There's no language in that case that supports the argument you just made. Is that what you're conceding? No, Your Honor. Point me to the language in the case that supports your argument. Yes, Your Honor. And we're looking at the top of page 445. Okay. I'm talking about in LaBerge. So there's nothing, there's no language in LaBerge that supports your argument. Your Honor, you would allege that it's the same idea. It's not, it's not, it doesn't directly address it as much as SIFRI does. Okay. Then let's go to SIFRI. Yes, Your Honor. So tell me the language in SIFRI that supports your argument that your client could not be charged with deportability as an overstay. Yes, Your Honor. Okay. The top of page 445. The issue in this case is whether a respondent is deportable under section 241A2. That's the predecessor to the overstay charge. It's the same exact language, but it was codified at a different place. As a nonimmigrant who remained longer than permitted for failure to depart pursuing a student to the district director's, quote, revocation of a student status prior to the expiration of his period of authorized stay. And it goes on to say section 241A2 renders deportable any alien, quote, in the United States in violation of the Immigration and Nationality Act or any other law of the United States. A charge lodged under this section is proper in the case of a nonimmigrant student who has remained longer than permitted. However, the deportability of an alien who fails to maintain status in which he was admitted or to comply with the conditions of that status is provided for under a different provision, section 241A9, which corresponds to the charge that they didn't bring in this case and that matter of SIFRI says should have been brought in a similar situation for failure, alleged failure to maintain status. Okay. It says in this case that the respondent had been given permission to remain for a fixed period. Yes, Your Honor. So was your client given authorization to remain for a fixed period? No, Your Honor, that's not how they do it anymore. Now they admit students for an indefinite period in what's called duration of status. All right. Don't you think that makes a difference? No, I don't, Your Honor. Because the statute still specifically provides for a ground of deportability for failure to maintain status. That ground of deportability, you know, it specifically covers failure to maintain status. And that's what the government argued in its brief Mr. Nawaiya didn't do. And the other thing to take away from these cases, the thing that ---- I don't quite understand. What is the unfairness here? He knew exactly what he was charged with and what he did. What's the substance of this? Yes, Your Honor. The issue is that before the immigration judge, he wasn't able to challenge the decision that he, quote, failed to maintain status. There's a big difference between not taking the six units versus three units and failing to maintain status. Our argument was that he didn't fail to maintain status where the district ---- where the designated school official gives him explicit authorization to drop below the six units. That's your estoppel argument? It's not an argument based on the interpretation of the statute. Well, Your Honor, it comes to the same point. But what the immigration judges and the board's decision shortcut in, what they didn't allow us to get to in the proceedings before the immigration judge was an ability to challenge whether dropping below that amount of units was a failure to maintain status. And our position would have been, look, you know, he got explicit authorization, so he didn't fail to maintain status. You got authorization to go on vacation before he completed the school year? Your Honor, our position is that he had ---- if you're talking about the 2002 spring vacation, he had done four terms at that point, and so he took the vacation in the fifth  But the other thing, Your Honor, to take away from matter of Liburd and matter of the authority to terminate status, we have to go back to what the board's decision was and what the immigration judge's decision was. They explicitly found him overstay because the district director terminated his status. Now, the red brief at page 29 virtually admits that the district director did not terminate status. So if the district director didn't terminate status, then the board's decision and the immigration judge's decision that he overstayed by staying longer than the Is there a piece of paper here that you're saying the district director issued that affected him that was not authorized? Your Honor, the district director decided the discretionary decision whether or not to reinstate his status. But that was not a termination of his status. If you look at ---- Well, I thought you were challenging the ability of the district director to terminate his status. And I don't see that the district director actually did that. He fell out of status. But, Your Honor, that's what the board held. If we go to the board's decision, what they say is the Department of Homeland Security terminated the respondent's student status for failure to maintain that status. Well, that's a matter of semantics. He actually fell out of status. The statute, I mean, the regulation and the statute are self-fulfilling. If you don't remain in a full-time student status, you fall out of status and you no longer are entitled to F-1 status, right? Well, Your Honor, what The student has his or her status within his or her control. Your Honor, what didn't happen was the immigration judge didn't decide that whether or not him dropping below a full course load was a failure to maintain status. The immigration judge said, okay, the district director terminated his status. He's been here longer than the district director's decision. So that's the end of it. So what would you have us to write in terms of the error here and the remedy? The error is if the government wants to establish that somebody admitted for duration of status has violated their status, they need to charge failure to maintain status. And what would be the remedy in your client's case? You would have us do what? I would have you terminate the case and the proceedings. And what happens? Is he here? What does that mean? Well, as I noted in my 28-J letter, he's not actually here. No. So what happens? Then he's not deportable as charged. And if he returns, the government can bring new allegations. But they have their chance below. You know, they originally charged failure to maintain status. And then they withdrew that charge. They instead decided to proceed only on the theory that he had overstayed the district director's decision. And the immigration judge, which the board affirmed, presented a matter of consent and agreed with the immigration judge's decision. It said the respondent's student status was ‑‑ I'm looking at page two of the decision, record 97. Record further reflects the respondent's status as a student was terminated by the Department of Homeland Security's Citizenship and Immigration Services Bureau on May 5, 2005. It's not saying that his status was terminated as of he fell out of status. It says it was terminated on May 5, 2005. That's the decision denying his reinstatement. So the immigration judge is explicitly saying the district director terminated his status. And that's why the district ‑‑ that's why the immigration judge upheld the overstay. So if there was denial of reinstatement, he still would have been out of status. We could not compel the Department of Homeland Security to reinstate his status. So he would have been in limbo even if we determined that procedurally there was an error. He would still be out of status because the Department of Homeland Security declined to reinstate his status. Well, there's a difference between the discretionary remedy and the question of whether he really maintained status. It's kind of like the issue of a right ‑‑ I'm sorry? I don't understand. Okay. You've used your time. I'm just really not understanding what you think the government should have done here. They should have charged failure to maintain status, Your Honor. And then they could have alleged, you know, you dropped below a certain number of units, and then he would have responded, look, I received specific authorization from the DSO, so that's not ‑‑ I mean, the administration judge just said that the district director terminated his status and he overstayed. Okay. We'll hear from the government.  Thank you. Good morning, Your Honor. May it please the Court, my name is Andrew McLaughlin, and I represent the Respondent Attorney General of the United States in this case. Please, at any point that you have questions that can direct me to what really is on your mind, let me do that. I think I can help with a couple of the things that have been in discussion here, if that indicates what it is you're arguing about. Two key points here. The first point is, and I think you understand this, is don't conflate the CVIS computer system with the concept of status. The two are completely unrelated. CVIS is a tool that is used to monitor status, but the agency still has to determine that somebody is out of status in order for them to be out of status. And that is ‑‑ and, frankly, the individual knows that he's out of status, but that's what causes the agency to put the person in proceedings. But as soon as the individual knows he's out of status, the obligation for him to leave the country goes in place. Is triggered. Is triggered immediately. Well, who made the decision that he was out of status? Well, in this case, the decision that he was out of status didn't really occur until he asked for reinstatement. And the district director said, well, you are out of status, and I'm not going to put you back into status because of all of these reasons. So as a procedural matter, did the director terminate status? No. That was an unfortunate use of words by the immigration judge. What actually happened is the individual had fallen out of status, and the district director was trying to use strong terms in the denial of reinstatement to tell the individual that he needed to leave now or else he was going to get put in proceedings because the obligation to leave was on Mr. Neumeier. So the computer sends a message that he's not pursuing the full course of study? Right. Well, there's two things that can take place. The only way that the school, the DSO, can terminate something is in the computer. The DSO can withdraw the school's certification that this person complies with the rules, and that is a red flag that signals to the agency this guy is out of status. The rest of the information that's provided through the system is just processed by the system, and there are certain things that cause the system. So the school can terminate if the person actually withdraws or the school says we're not doing business with you anymore, students. But with respect to the other data that's inputted by the school, some of it sets off red flags in the system, and what happened in this case, or at least it's very hard to tell some of the things that happened in this case, but the guess about what happened in this case is that the DSO, one person's guess is that he failed to input the summer term in approximately May of 2004, and that set off the 90-day clock, and by the time the school got around to trying to fixing it, the 90-day clock was already gone, and they were locked out of the system because he was terminated from his SEVIS access. His status wasn't terminated. His SEVIS access was terminated. He was out of status the moment he failed. He was a no-show for that term. Now, frankly, he was out of status before because of the insufficient credits he was maintaining. He was out of status clearly after the spring of 2004 when he failed the one course he was taking. He got zero credits raising one of those red flags in SEVIS had that information been entered. So it's not clear to me whether or not the school failed to enter the next quarter or the school did enter the failure in the previous quarter. Either one would have set off that 90-day clock. Well, his argument is that he was never permitted to argue that he was really in status because he was taking these classes. Is that true, that he denied some kind of argument because of the way the charges were? The argument was the written argument was made to the immigration judge. The immigration judge simply said, look, you're out of status, period. Your option here, if there's something, if you read the actual regulation buried way deep in 214.2 F16 is the reinstatement provision and subsection 4 is the section for the criteria that are supposed to be applied there. That describes the situation where the inadvertence or incompetence or those administrative kinds of errors can be subject to, can be, there is the discretion of the district director to reinstate on that basis unless something happened that was the fault of the alien himself, like not taking enough classes, failing classes, failing to show, he didn't even register for any classes in August of 2004. So even if all of those other things hadn't happened, he would have been out of status as of August 9th, 2004 because he hadn't registered for any class. He wasn't in any class and he doesn't even contest that. He doesn't contest that he failed spring of, he got zero credits in the spring of 2004 and he doesn't contest that he didn't enroll in any class in August of 2004 until September of 2004. What's your response to opposing counsel's reliance on matter of Liburd and matter of Seafree? Well, I have two. One is it doesn't, frankly, it's not, it doesn't apply directly at all for the reason that you identified. Both of those cases, and Liburd quotes Seafree in this, but it deals with once a person has entered for a fixed period. This is not an entry for a fixed period. This is an entry for duration of status, totally different. But the second thing is, Seafree and Liburd quotes it, says exactly the opposite. What it says is, if you enter for a fixed, once you've entered for a fixed period, you can't be out of status, you can't be unlawful in that period unless you do something wrong. So what these cases are saying is, if the district director does something that takes you out of status, like revoke your status, then you have to be charged in a different way. But the specific words in both cases, and Liburd quotes Seafree, once a nonimmigrant has been admitted for a fixed period, and we've already discussed that, the period of his stay may not be unlawful. It doesn't say out of status. It says unlawful, which is the term in 237a1b, unless by his own conduct he violates one of the conditions. So these cases don't stand for the principle that you can't charge a person who's in for a fixed period as being here contrary to law. They stand for the principle that unless he does something wrong, you can't charge him with that. So those are the fundamental two arguments that I want to get in front of you. That disposes entirely of the issue of removability. This alien was out of status and is removable, period, as of a number of different violations. Now, and secondly, it disposes of the question of estoppel because there simply is no misconduct here. The system worked as it was supposed to work. SEVIS highlighted an alien who was having issues. There was some peculiarities in that process, and it didn't work the way SEVIS was supposed to work, and we're getting better and better. SEVIS, by the way, was brand new in 2003, and we're still working through those glitches and figuring out how to set off those alarms. But that system worked perfectly, and what the district director did was entirely appropriate for entirely appropriate reasons. Looking at the merits of the thing, Is there a statutory requirement that you have to have completed a full term before you can take vacation? Yes. The statutory requirement is you're not eligible to take what they call a summer vacation or any kind of substitute vacation unless you've completed one year, not just one term, but one year. And he had, indeed, done that. I think the problem that they identified with respect to the 2000- Wait a minute. Did he do that? Yes. There's a secondary condition, however. Did he complete one term, full term, before the vacation? Mr. Inouye took three different vacations, and in each of those instances, as far as I know, he had completed the full year in advance. The secondary condition, however, is that you be enrolled in the next term afterwards, and I think that's what went wrong here. It's not clear from the record, but I think that was the problem here. Regardless, it's irrelevant. He was out of status for every other reason. So he is removable as being in the United States contrary to law. Did I answer your question, sir? Yes. Could you address the estoppel issue? Well, fundamentally, if there's no affirmative misconduct out there, there can't be estoppel. What I want to point out is that with respect to the argument that he's making is that it's the misconduct of the DSO that should be imputed to the government. Well, first of all, we've only identified incompetence on behalf of the DSO, which hardly adds up to the kind of affirmative misconduct holding that this Court has looked for. But secondly, equitable estoppel is only available when there isn't a remedy available. We have the specific remedy of reinstatement available in this situation to the precise incompetence and inadvertence, whatever it was that you're trying to describe what the DSO did. That remedy was available. Equitable estoppel is simply not available in this kind of circumstance. There's a number of other reasons that I could go into, but I think that's what the question is. He asked for reinstatement. He asked for reinstatement at one time, and that was denied. That's correct. He had previously gotten reinstatement. He was familiar with this process, having done it previously. And that previous instance also shows you an example of why you don't have to wait until somebody declares you to be out of status to ask to be reinstated. In that instance, he essentially dropped out of the University of Pittsburgh, I think it was, and then asked to be reinstated so he could enter Embry-Riddle. He did that all on his own without anybody telling him you're out of status and therefore you must leave. He got his application in in a timely manner without anybody prompting him, without any termination by the agency of his status. What was the specific issue that was before the immigration judge? There was some briefing done in advance that raised essentially the same issues that are being raised in the brief here today. However, the only argument that was put forward in front of the immigration judge dealt with estoppel. That is, the government should be estopped from, and I'm not exactly sure what they were trying to estoppel him from, at least from removing him based on that charge, possibly from charging him based on the information that was obtained through the SEVIS system. That's what I, the hearing was fairly short, but the immigration judge understood what was going on based on the prior pleadings. Well, just help me once. I'm a little confused as to exactly why he lost his status. Was it because he had failed to complete a year before he took a vacation, or was it because he didn't enroll in a full course of study? The reason, technically he lost his status, when the district director was looking backward to figure out is this guy out of status or not, technically he lost his status at the time he wasn't taking a full case load, full course load for the right reasons. There are certain reasons that you can be permitted, and there are certain reasons that you can't. And so the DSO can't authorize a person to take fewer courses for the wrong reasons. So technically that's the earliest point in time. But clearly he was also out of status for not pursuing an academic degree because he had zero credits in the spring of 2004. He was also out of status because he failed to enroll in any class in August of 2004. He was also out of status because when he did enroll for that class there was only one, not two, and for the next quarter there was only one and not two, and he failed both of those classes. Those are reasons that he's out of status. There may be explanations, reasons, excuses, but all of those things put him out of status and required him to seek reinstatement, which was denied based on a litany of different reasons. The decision of the immigration judge was a little imprecise in terms of what the issues were. Honestly, the board's decision was a little imprecise, and the district director's findings were, he shifted around a little bit with Mr. Mossman's help, but he was on the right track. Mr. Nowaya was indeed out of status. Is that enough just to be on the right track? It's very difficult to follow what was before the immigration judge and before the BIA and the basis, therefore, for his removal. Yes. Because of the nature of the denial of reinstatement by the district director and the denial of reconsideration, all of the information, all of the grounds, were essentially built into those documents. The evidence of the allegations was, and the allegation was clear in the charge, what was being charged. It was a factual allegation that was sustained. So what we have is essentially those are the reasons that the immigration judge was looking at, and simply the immigration judge just kind of adopted those. He said that it is clear based on this record that this guy is out of status, that's all he said, and that he's removable as charged. So he didn't give a detailed explanation, but given the argument that was put forward before him, just that the government should be estopped, orally on the record in the hearing, he wasn't required to do any more. So what was actually, so you say what was actually litigated before the immigration judge was whether or not because he had been told all along by the DSO, his position that he had been told all along by the DSO that he was okay, that the government was estopped to say that he was out of status? Right. The immigration judge also considered the issue about whether or not that put him in status during that period of time. And it's not clear whether the immigration judge found that that was the basis that was sustained or one of the other bases that he was out of status or what was being sustained. The immigration judge said, look, there's no point in going on. This guy was out of status. And he had counsel before the I.J.? I believe Mr. Mossman represented him before the I.J. Okay. If there's nothing further, thank you. Your Honor, just briefly, the only decision that the court can review is the agency's decision. The government counsel is saying that the immigration judge issued a very brief decision, didn't provide much explanation, adopted the district director's reasons and explanations in the denial of the reinstatement. But that's not, the immigration judge denied it because he had, it was under the impression that the district director's decision terminated the status. And then it was just a simple overstay, as if his visa had ended on May 5, 2005. And then because he was simply here later than that date, he should be deported. We didn't. You know, I just don't see, as I read these decisions, it appears that what you were arguing was that that was estoppel, that he was following the, and it's almost as if, okay, there was a problem, but the government can't do anything to me as a result because of the DSO. And I just don't, I can't figure out how you were actually deprived of any opportunity to argue that. May I answer your other question? Yes, please. What didn't happen before the immigration judge is that the immigration judge didn't decide, look, if the DSO gives you a certain number, an authorization to drop below a certain number of units, then you've, even if that authorization was incorrect, you've still failed to maintain status. Because the government's been addressing this as if failure to maintain status is exactly identical to going below six units or taking a vacation. But the immigration judge didn't decide that. The immigration judge just said he'd stayed here longer. And if I look at your appeal to the BIA, I'll find that clearly stated, that position? Yes. Okay, I'll look at that. Our very first motion to terminate before the immigration judge argued LaBerg and Sifri, too. Okay. Now we're back. Okay. That's what you were arguing, LaBerg and Sifri. Okay. Very beginning, yes, Your Honor. Okay, thank you. Thank you, Your Honor. The matter just argued is submitted for decision.
judges: Hug, Schroeder, Rawlinson